UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| A.R., a minor, by and through her Guardian Ad Litem, Monica Miner,<br><br>Plaintiff,<br><br>v.<br><br>ERIC HERNANDEZ, et al.,<br><br>Defendants. | Case No.:  24-cv-1539-SBC<br><br>**ORDER GRANTING PLAINTIFF'S AMENDED UNOPPOSED EX PARTE APPLICATION FOR APPROVAL OF COMPROMISE OF A MINOR'S CLAIM [DKT. NO. 37]** |

Pending before the Court is Plaintiff's Amended Unopposed Ex Parte Application for Approval of Compromise of a Minor's Claim filed by Plaintiff A.R., a minor, by and through her guardian ad litem, Petitioner Monica Miner. (Dkt. No. 37.) The application seeks Court approval of a settlement involving a minor, distribution of the settlement funds, and the purchase of a structured annuity using the minor's settlement proceeds. For the reasons set forth below, Plaintiff's application is **GRANTED**.

## I.    BACKGROUND

### A.    Factual Background

The following factual background is taken from the allegations in Plaintiff's First Amended Complaint. (Dkt. No. 13.) A.R., the minor Plaintiff, was born in 2022 to Makayla Adams ("Adams") and Michael Ricks ("Ricks"). The relationship between Adams and

Ricks was complicated by domestic violence, with Ricks physically abusing Adams throughout the relationship and often threatening to kill her. Ricks was incarcerated during Adams's pregnancy and Plaintiff's infancy. In the summer of 2022, Ricks was released on parole to a Southern California probation facility located in Vista, California. Defendant Hernandez was Ricks's parole officer. In the months and days before September 13, 2022, both Adams and her mother, Petitioner Monica Miner, communicated frequently with Defendant Hernandez to express Adams's fear that Ricks would kill her and Plaintiff due to numerous threats by Ricks to do so. In early July 2022, Adams moved to her parents' home in Las Vegas, Nevada. Both Adams and Miner advised Defendant Hernandez that Ricks knew where the Miners lived, and that Adams remained in danger from Ricks. Defendant Hernandez promised Adams that if Ricks were to leave the Community Program in which he was placed, Hernandez would immediately notify Adams.

On September 13, 2022, Defendant Hernandez met with Ricks at the Community Program. Shortly thereafter, Ricks left the Program without authorization. Defendant Hernandez was informed that Ricks had left and that the Program did not know where he was. Defendant Hernandez did not contact Adams or Miner as he had promised. After Ricks left the Community Program, he drove to Las Vegas, where he suddenly appeared at the Miner home. There, while Adams held her baby (Plaintiff A.R.), Ricks viciously stabbed and murdered Adams.

**B.    Procedural Background**

On August 30, 2024, Plaintiff filed a complaint against Defendant Hernandez and Does 1 through 10. (Dkt. No. 1.) On January 28, 2025, following the filing of a motion to dismiss by Defendant Hernandez, Plaintiff filed an Amended Complaint. (Dkt. No. 13.) The Amended Complaint alleges claims for (1) violation of civil rights under 42 U.S.C. § 1983 against Defendant Hernandez; (2) negligence against Does 1 through 10; and (3) fraud against Does 1 through 10. (*Id.*)

On April 18, 2025, Magistrate Judge Allison H. Goddard held an Early Neutral Evaluation Conference ("ENE"). (Dkt. No. 18.) The case did not settle, but Judge Goddard

24-cv-1539-SBC

ordered the parties to engage in limited discovery and set an additional ENE. (Dkt. No. 19.) Judge Goddard held an all-day second ENE on November 14, 2025, and made a mediator's proposal at the conclusion of the conference. (Dkt. No. 24.) On November 20, 2025, Judge Goddard issued a docket order indicating that the parties had accepted the mediator's proposal, and the case had settled. (Dkt. No. 25.)

On November 21, 2025, this case was referred to the undersigned for the purpose of assessing the proposed settlement. (Dkt. No. 26.) On January 7, 2026, pursuant to the consent of the parties, the case was referred to the undersigned to conduct all proceedings and order entry of a final judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (Dkt. No. 31.)

On January 12, 2026, Plaintiff, by and through Petitioner, filed her initial Unopposed Ex Parte Application for Approval of Compromise of a Minor's Claim. (Dkt. No. 34.) The Court held a hearing on the application on January 21, 2026, and granted time for Plaintiff to file an amended application. (Dkt. No. 36.) On January 27, 2026, Plaintiff filed the amended application presently before the Court. (Dkt. No. 37.)

## II.    LEGAL STANDARD

Local Civil Rule 17.1 addresses settlements involving minors:

> **Order of Judgment Required.** No action by or on behalf of a minor or incompetent, or in which a minor or incompetent has an interest, will be settled, compromised, voluntarily discontinued, dismissed or terminated without court order or judgment. All settlements and compromises must be reviewed by a magistrate judge before any order of approval will issue. The parties may, with district judge approval consent to magistrate judge jurisdiction under 28 U.S.C. § 636(c) for entry of an order approving the entire settlement or compromise.

CivLR 17.1(a).

"District courts have a special duty, derived from Federal Rule of Civil Procedure 17(c), to safeguard the interests of litigants who are minors." *Robidoux v. Rosengren*, 638 F.3d 1177, 1181 (9th Cir. 2011). To carry out this duty, the court must "conduct its own inquiry to determine whether the settlement serves the best interests of the minor." *Id.*

(quoting *Dacanay v. Mendoza*, 573 F.2d 1075, 1080 (9th Cir. 1978)). In *Robidoux*, the Ninth Circuit established that district courts reviewing the settlement of a minor's federal claim should "limit the scope of their review to the question whether the net amount distributed to each minor plaintiff in the settlement is fair and reasonable, in light of the facts of the case, the minor's specific claim, and recovery in similar cases." *Id.* at 1181-82. District courts should "evaluate the fairness of each minor plaintiff's net recovery without regard to the proportion of the total settlement value designated for adult co-plaintiffs or plaintiffs' counsel—whose interests the district court has no special duty to safeguard." *Id.* at 1182 (citing *Dacanay*, 573 F.2d at 1078). "So long as the net recovery to each minor plaintiff is fair and reasonable in light of their claims and average recovery in similar cases, the district court should approve the settlement as proposed by the parties." *Id.*

The Ninth Circuit limited its holding in *Robidoux* "to cases involving the settlement of a minor's federal claims" and did "not express a view on the proper approach for a federal court to use when sitting in diversity and approving the settlement of a minor's state law claims." *Id.* at 1179 n.2. Under California law, the court is tasked with evaluating the reasonableness of the settlement and determining whether the compromise is in the best interest of the minor. *See A.M.L. v. Cernaianu*, LA CV12-06082 JAK (RZx), 2014 WL 12588992, at *3 (C.D. Cal. Apr. 1, 2014) (citations omitted). The California Probate Code "bestows broad power on the court to authorize payment from the settlement—to say who and what will be paid from the minor's money—as well as direct certain individuals to pay it." *Goldberg v. Superior Court*, 23 Cal. App. 4th 1378, 1382, 28 Cal. Rptr. 2d 613 (Cal. Ct. App. 1994) (analyzing Cal. Prob. Code § 3601). The Probate Code also authorizes the court approving a compromise of a minor's disputed claim to "make a further order authorizing and directing that reasonable expenses, . . . costs, and attorney's fees, as the court shall approve and allow therein, shall be paid from the money or other property to be paid or delivered for the benefit of the minor." Cal. Prob. Code § 3601(a).

///

///

4

## III.   DISCUSSION

The parties have agreed to settle Plaintiff A.R.'s claim for $250,000.00. (Dkt. No. 37 at 3.) The proposed distribution of the settlement is as follows:

**$55,000.00** in attorney's fees, payable to Plaintiff's attorney, which comprises 22% of the $250,000.00 settlement (a reduction from the 25% contingency fee set forth in the retainer agreement signed by Petitioner) (*see id.* at 5-6; Dkt. No. 37-1 at 4);

**$4,557.47** in costs, payable to Plaintiff's attorney (Dkt. No. 37 at 6; Dkt. No. 37-1 at 4);

**$25,000.00** to be disbursed to Petitioner Monica Miner, Plaintiff's grandmother and now adoptive mother, to be used to care for Plaintiff (Dkt. No. 37 at 7, 9; Dkt. No. 37-1 at 6, 8); and

**$165,442.53** to be disbursed to fund a structured settlement annuity for Plaintiff (Dkt. No. 37 at 7, 9; Dkt. No. 37-1 at 6, 7).

Plaintiff A.R.'s settlement funds of $165,442.53 will be used to purchase a structured settlement annuity, which will yield a net total of $408,016.56. (Dkt No. 37 at 9; Dkt No. 37-1 at 13.) The structured settlement annuity provides for guaranteed payments of $4,857.34 payable monthly for seven years, beginning on January 9, 2040, with the last guaranteed payment on December 9, 2046. (Dkt. No. 37 at 9; Dkt. No. 37-1 at 13.)

In reviewing a petition to approve a minor's compromise, the court should evaluate "whether the net amount distributed to each minor plaintiff in the settlement is fair and reasonable, in light of the facts of the case, the minor's specific claim, and recovery in similar cases." *Robidoux*, 638 F.3d at 1182. Here, the proposed net recovery for Plaintiff is $165,442.53. Considering the facts of the case, Plaintiff's claims, and recoveries in similar cases, Plaintiff's net recovery is fair, reasonable, and in Plaintiff's best interests for the reasons discussed below.

First, although Plaintiff's mother was stabbed to death while she was holding Plaintiff in her arms (Dkt. No. 37 at 4), Plaintiff was an infant at the time and has little to no memory of the event. (*Id.*) She did not suffer any physical harm, receive medical or

24-cv-1539-SBC

psychological care, or incur any medical bills because of the incident. (*Id.* at 4-5.) Thus far, she has not indicated any need for psychiatric treatment. (*Id.*)

Second, the net settlement amount is consistent with or exceeds settlements in similar cases. *See, e.g.*, *Castro Gutierrez v. City of San Diego*, Case No. 21-cv-1292-H-BGS (S.D. Cal. Dec. 11, 2023) (approving net payment of $150,000.00 to four-year-old plaintiff in civil rights wrongful death case involving the shooting death of the minor's father); *E.S. by and through Gonzalez v. City of Visalia*, Case No. 1:13-cv-1697-LJO-BAM, 2015 WL 6956837, at *1-2 (E.D. Cal. Nov. 3, 2015), *report and recommendation adopted*, 2015 WL 13215675 (E.D. Cal. Nov. 20, 2015) (approving a minor's compromise for net payment of $130,444.83 in action involving the shooting and killing of minor's father); *Frary v. Cnty. of Marin*, Case No. 12-cv-03928-MEJ, 2015 WL 575818, at *3 (N.D. Cal. Feb. 10, 2015) (finding minor's net settlement of $92,305.48 to be reasonable and in minor's best interests in action alleging that omissions by county personnel resulted in minor's father's in-custody death).

Third, the parties reached the terms of the proposed settlement by accepting a mediator's proposal issued by Magistrate Judge Goddard following two Early Neutral Evaluation Conferences, the second of which was a full-day session. (Dkt. Nos. 18, 24, 25.) *See, e.g.*, *Parenti v. Cnty. of Monterey*, Case No. 14-cv-05481-BLF, 2019 WL 1245145, at *3 (N.D. Cal. Mar. 18, 2019) (approving a minor's compromise as reasonable in part because "the parties engaged in extensive negotiations with a magistrate judge to reach settlement").

Fourth, the proposed payment of $25,000.00 to be used to care for Plaintiff is fair, reasonable, and in the minor's best interests. *See, e.g.*, *Garlick v. Cnty. of Kern*, Case No.: 1:13-cv-01051-LJO-JLT, 2016 WL 4087057, at *2 (E.D. Cal. Aug. 2, 2016), *report and recommendation adopted*, 2016 WL 4445852 (E.D. Cal. Aug. 22, 2016) (approving $10,695.98 of $132,000.00 net settlement to be paid immediately to minor's mother/guardian ad litem to provide her daughter a laptop, ballet lessons, and orthodontia services). Petitioner has provided documentation reflecting that she lives in public housing,

24-cv-1539-SBC

her monthly rent is $293.00, and she is in arrears on her rent in the amount of $1,673.65, as of January 7, 2026. (Dkt. No. 37 at 9; Dkt. No. 37-1 at 15-17.) She also stated during the hearing that A.R. attends daycare at the cost of $215.00 per week. A current payment of $25,000.00 to Petitioner to be used to maintain the family's residence and provide other care to Plaintiff, including daycare, is to the minor's benefit.

Moreover, Petitioner proposes that Plaintiff's settlement funds of $165,442.53 be used to purchase a structured settlement annuity, which will yield a net total of $408,016.56. (Dkt No. 37-1 at 13.) Specifically, the proposed structured settlement provides for guaranteed monthly payments of $4,857.34 for seven years, beginning on Plaintiff's eighteenth birthday, January 9, 2040, until December 9, 2046. (*Id.*) Petitioner obtained confirmation of the structured settlement annuity from Marjorie Smith, Certified Financial Planner, of Sage Settlement Consulting, LLC. (*Id.*) The quote is based on rates from Athene Annuity and Life Company, rated A+XV by A.M. Best Co. (*Id.*)[1]

In addition to assessing whether the settlement is fair and reasonable, the Court, under California law, must approve the attorney's fees and costs to be paid for representation of a minor. *See* Cal. Prob. Code § 3601. This requirement applies "regardless of whether the [minor's] claims arise under state or federal law." *Alter by & through Alter v. Cnty. of San Diego*, No. 21-cv-1709-BLM, 2023 WL 4166096, at *5 (S.D. Cal. June 22, 2023). Where, as here, "the recipient of the money or property is not a California resident,

---

[1] A.M. Best Co. is a global credit rating agency specializing in the insurance industry. *See* A.M. Best, https://web.ambest.com/about/ [https://perma.cc/MX8M-HVAU] (last visited Jan. 13, 2026). An "A+" rating is assigned to insurance companies that have a superior ability to meet their ongoing insurance obligations. *See* A.M. Best, https://www.ambest.com/ratings/guide.pdf [https://perma.cc/45U3-8F7T] (last visited Jan. 13, 2026). The "XV" designation reflects an insurance company with greater than or equal to $2 billion in capital and surplus. *See* A.M. Best, https://www3.ambest.com/ambv/ratingmethodology/OpenPDF.aspx?rc=333374 [https://perma.cc/M6BP-QHUC] (last visited Jan. 13, 2026).

24-cv-1539-SBC

disbursement must occur pursuant to court restrictions which are similar to those of [California Probate Code § 3600], et seq." (CivLR 17.1(b)(1).)

Where counsel represents a minor on a contingency fee basis, attorney's fees are generally limited to 25% of the gross recovery. *See, e.g.*, *Doe v. Lincoln Mil. Prop. Mgmt., LP*, Case No.: 3:20-cv-00224-GPC-AHG, 2020 WL 5810168, at *3 (S.D. Cal. Sept. 30, 2020); *DeRuyver v. Omni La Costa Resort & Spa, LLC*, No. 3:17-cv-0516-H-AGS, 2020 WL 563551, at *2 (S.D. Cal. Feb. 4, 2020). To determine whether the fee is reasonable, courts consider a myriad of factors including the amount of the fee in proportion to the value of the services performed, the novelty and difficulty of the questions involved and skills required, the amount involved and the results obtained, and the experience and ability of the attorney. Cal. R. Ct. 7.955(b). Here, Plaintiff's counsel requests 22% of the gross settlement amount. Under the facts and circumstances of this action, the requested attorney's fees are fair and reasonable. Additionally, the Court finds that the costs incurred by Plaintiff's counsel are fair and reasonable.

## IV.    CONCLUSION

For the reasons set forth above, Plaintiff's Amended Unopposed Ex Parte Application for Approval of Compromise of a Minor's Claim filed by Plaintiff A.R., a minor, by and through her guardian ad litem, Petitioner Monica Miner (Dkt. No. 37) is **GRANTED**. The Court approves the distribution of the settlement funds as follows:

| | |
|---|---|
| Gross Settlement | $250,000.00 |
| Gross Settlement Amount to Plaintiff A.R. | $165,442.53 |
| Disbursement to Petitioner Monica Miner to be used to care for Plaintiff | $ 25,000.00 |
| Attorney's Fees | $ 55,000.00 |
| Costs | $ 4,557.47 |

Plaintiff A.R.'s settlement funds of $165,442.53 are to be used to purchase a structured settlement annuity, which will provide monthly payments of $4,857.34 for seven

years, beginning on January 9, 2040, until December 9, 2046, yielding a net total of $408,016.56, in accordance with Exhibit 1 to the Court's order.

In light of this order, Plaintiff's initial Unopposed Ex Parte Application for Approval of Compromise of a Minor's Claim (Dkt. No. 34) is **DENIED AS MOOT**.

**IT IS SO ORDERED**.

Dated:  January 28, 2026

Hon. Steve B. Chu
United States Magistrate Judge

24-cv-1539-SBC

# Exhibit 1 to Court's Order

**CONFIRMATION OF STRUCTURED SETTLEMENT ANNUITY**
**FOR**
**A.R**
**Date of Birth: 00/00/2022**

This quote is based on rates from
Athene Annuity and Life Company
Rated A+XV by A.M. Best Co.

Purchase Date: 04/05/2026

# COURT EXHIBIT

|  | Cost | Guaranteed Benefits |
|---|---|---|
| **Guaranteed Payments** | | |
| $4,857.34 payable monthly, guaranteed for 7 year(s), beginning on 01/09/2040, with the last guaranteed payment on 12/09/2046. | | |
| **TOTAL** | **$165,442.53** | **$408,016.56** |

It is understood that the Defendant and/or Insurer shall make a qualified assignment under Section 130 of the Internal Revenue Code to Athene Qualified Assignment Company to fund the obligation to make payments through the purchase of an Annuity from Athene Annuity and Life Company, who shall make the future periodic payments.

The projected purchase date of the annuity policy is 04/05/2026. Any delay in funding the annuity may result in a delay of the payment dates by an equal number of days, or a change in the payment amounts that shall be accurately recorded in the qualified assignment and release document and annuity contract without the need of obtaining an amended Petition or Court Order.  A comparably rated life insurance company may be substituted to obtain the best interest rates available at the time of funding.

**Note:**
  ❖  A structured settlement annuity is income tax-free for personal injury victims under IRC 104 (a)
  ❖  Illustrated benefits are fixed (guaranteed) and will not vary once locked-in
  ❖  IRR: 5.41%

**\*\*\*This quote is LOCKED-IN\*\*\***
**If premium is not received by assumed purchase date the above benefits may change.**
This quote is not valid if the date of birth or gender is incorrect.

Prepared By:  Marjorie Smith, CFP®, Sage Settlement Consulting, LLC